UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| RALSTON SAMUELS, | : |
|     Plaintiff, | : |
|     vs. | :   No. 3:08cv1872(WIG) |
| DAVID N. STRANGE, ROBERT W. HART, JEFFREY C. JEANNOTTE, and NEVILLE CAPELTON, | : : |
| | : |
|     Defendants. | |

-------------------------------------------------------X

RULING ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT [Doc. # 51]

    Plaintiff, Ralston Samuels, has brought this civil rights action under 42 U.S.C. § 1983 against Defendants Strange, Hart, Jeannotte, and Capelton, all of whom are employees of the State of Connecticut, Department of Correction ["DOC"], alleging that Defendants violated his rights under the First and Eighth Amendments to the United States Constitution. More specifically, he alleges that, while he was an inmate at the Osborne Correctional Center in Somers, Connecticut, Officer Hart deliberately contacted Plaintiff's genitals during a pat-down search. After Plaintiff complained to Officer Hart's supervisors, Plaintiff was charged with possession of contraband, namely several slices of bread that he had taken from the mess hall. He claims that Captain Capelton and Lieutenant Jeannotte further retaliated against him by placing him in punitive segregation for a period of twenty-one days, even though the maximum punishment for his offense was only ten days. He alleges that Defendant Strange, as Warden, approved of this punishment. Plaintiff has sued all Defendants in both their individual and

1

official capacities. As relief, he seeks compensatory and punitive monetary damages, plus attorney's fees. Now pending before the Court is Defendants' motion for summary judgment as to all claims in Plaintiff's complaint.

## Summary Judgment Standard

Rule 56(a), Fed. R. Civ. P., provides that "the court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." In considering a motion for summary judgment, this Court is required to view the evidence in the light most favorable to the non-moving party and to resolve all ambiguities and draw all reasonable inferences against the moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). The Court's function is not to resolve disputed factual issues but rather to determine if there exists a genuine issue for trial. *Id.* at 249. The party seeking summary judgment bears the burden of showing that no genuine issue of material fact exists. *Cronin v. Aetna Life Ins. Co.*, 46 F.3d 196, 202 (2d Cir. 1995). The substantive law governing the case identifies those facts that are material. *Anderson*, 477 U.S. at 248. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id.* A dispute regarding a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

## Discussion

Defendants have raised five issues in their summary judgment motion:

(1) Plaintiff's official capacity claims are barred by the Eleventh Amendment to the United States Constitution;

(2) Defendant Strange was not personally involved in the incidents giving rise to Plaintiff's complaint;

(3) Plaintiff's claim that he was sexually groped does not rise to the level of a constitutional violation;

(4) There is no merit to Plaintiff's retaliation claim; and

(5) Defendants are entitled to qualified immunity.

Plaintiff does not oppose Defendants' argument that his official capacity claims are barred by the Eleventh Amendment, nor does he oppose Defendant Strange's dismissal based upon his lack of personal involvement. Therefore, the Court grants partial summary judgment in favor of Defendants on Plaintiff's official capacity claims and grants summary judgment in favor of Defendant Strange as to all claims of Plaintiff's complaint. The Court now turns to the remaining issues presented by Defendants' motion for summary judgment.

I.  Plaintiff's Eighth Amendment Claim

"The Eighth Amendment sets constitutional boundaries on the conditions of imprisonment." *Boddie v. Schneider*, 105 F.3d 857, 861 (2d Cir. 1997). To set forth an Eighth Amendment claim, a prisoner must demonstrate that (1) the alleged conduct/punishment is objectively "sufficiently serious;" and (2) the prison official acted with a "sufficiently culpable state of mind," that is, he acted maliciously and sadistically to cause harm. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (quotations in original); *Hudson v. McMillian*, 503 U.S. 1, 5 (1992).

According to Plaintiff, on January 23, 2008, at approximately 11:15 a.m., as he was exiting the mess hall, he was stopped by Officer Hart. When he was asked what he had in his pocket, Plaintiff removed several slices of bread wrapped in plastic, handed them to the officer, and started to walk away. As he was walking away, Officer Hart asked him where he was going

and ordered him to face the wall to be pat-searched. Plaintiff states that he was pushed to the wall and that Officer Hart started patting him down in a rough manner. During the search, Plaintiff alleges that his pants were pulled down below his buttocks, and Officer Hart grabbed his genitals for several seconds. Plaintiff got angry and told Officer Hart that he wanted to speak to a Lieutenant. Officer Hart finished the search and told Plaintiff to leave. Plaintiff was swearing at him and then proceeded to the front desk to make a complaint. (Wit. St. of Pl. to Conn. Dep't of Pub. Safety dtd. Feb. 26, 2008).

In *Boddie,* the Second Circuit acknowledged that allegations of sexual abuse of a prisoner by a corrections officer may constitute serious harm cognizable under the Eighth Amendment's right to be free from cruel and unusual punishment. 105 F.3d at 861. The Second Circuit held that

> [s]exual abuse may violate contemporary standards of decency and can cause severe physical and psychological harm. For this reason, there can be no doubt that severe or repetitive sexual abuse of an inmate by a prison officer can be "objectively, sufficiently serious" enough to constitute an Eighth Amendment violation. Moreover, like the rape of an inmate by another inmate, sexual abuse of a prisoner by a corrections officer has no legitimate penological purpose, and is "simply not part of the penalty that criminal offenders pay for their offenses against society."

*Id.* (internal citations omitted). In *Boddie*, however, the Second Circuit did not hold, as a matter of law, that all sexual contact violates the Eighth Amendment. Instead, it affirmed the district court's holding that, in that case, the plaintiff had failed to state an Eighth Amendment claim. There, the plaintiff asserted

> a small number of incidents in which he allegedly was verbally harassed, touched, and pressed against without his consent. No single incident that he described was severe enough to be "objectively, sufficiently serious." Nor were the incidents cumulatively egregious in the harm they inflicted. The isolated episodes of

4

> harassment and touching alleged by Boddie are despicable and, if true, they may potentially be the basis of state tort actions. But they do not involve a harm of federal constitutional proportions as defined by the Supreme Court.

*Id.* at 861 (internal citations omitted).

The Supreme Court has not defined what constitutes "objectively, sufficiently serious" but the vast majority of courts to have addressed the issue have found that isolated instances of inappropriate conduct by prison officials do not violate an inmate's constitutional rights. *See, e.g., Washington v. Harris*, 186 Fed. App'x 865, 866 (11th Cir. 2006) (holding that inmate failed to state Eighth Amendment claim where a prison guard "crept up behind [the prisoner inmate] while he was working," grabbed his genitals, kissed him on the mouth, and threatened to perform oral sex on him); *Jackson v. Madery*, 158 Fed. App'x 656, 661 (6th Cir. 2005) (holding that the plaintiff's allegations that a guard grabbed and rubbed his buttocks in a degrading manner during a shakedown in the food area was insufficient to establish an Eighth Amendment violation); *Hughes v. Smith*, 237 Fed. App'x 756, 759 (3d Cir. 2007) (holding that the inmate had not alleged an Eighth Amendment violation where the correctional officer allegedly touched the inmate's testicles through his clothing during a single pat-down frisk); *Young v. Brock*, No. 10-cv-01513, 2012 WL 385494, at *4 (D. Colo. Feb. 7, 2012) (holding that the plaintiff's allegations that he was subjected to unnecessary and unwelcomed sexual touching by a prison guard in the course of a single pat-down search did not state a claim under the Eighth Amendment, particularly where the plaintiff conceded that the pat-down had a penological purpose); *Pantusco v. Sorrell*, No. 09-cv-3518, 2011 WL 2148392, at *7-8 (D.N.J. May 31, 2011) (holding that the plaintiff's Eighth Amendment claim failed because a single instance of groping during a routine pat-down frisk did not amount to cruel and unusual punishment); *Escobar v. Reid*, 668 F. Supp.

2d 1260, 1278, 1295–96 (D. Colo. 2009) (holding that a guard's alleged suggestive, sexual touching of an inmate did not state a constitutional violation); *Williams v. Anderson*, No. Civ. A. 03-3254, 2004 WL 2282927, at *4 (D. Kan. Sept. 7, 2004) (finding no Eighth Amendment violation where a prison guard grabbed a pre-trial detainee's buttocks, exposed his genitals to the inmate plaintiff, and made crude sexual remarks).

Plaintiff asserts that the definition of cruel and unusual punishment under the Eighth Amendment must be assessed in light of contemporary standards of decency and societal expectations. Relying on the case of *Rodriguez v. McClenning*, 399 F. Supp. 2d 228, 238 (S.D.N.Y. 2005), Plaintiff argues that, in the eight years since the Second Circuit decided *Boddie*, contemporary standards of decency have so evolved as to condemn all sexual assaults of prison inmates by prison employees. The district court in *Rodriguez* noted that, since the *Boddie* decision in 1998, when fifteen states did not prohibit sexual contact between prison employees and inmates, only four in 2005 failed to outlaw such behavior. *Id.* This trend, the court regarded, as demonstrating a "national consensus that *any* assault of a prisoner by a prison employee constitutes cruel and unusual punishment." *Id.* (emphasis added).

This Court finds that the holding of *Rodriguez* is inconsistent with Second Circuit precedent, as well as the vast majority of relevant circuit and district court cases, including those cited above. *See also Harry v. Suarez*, No. 10 Civ. 6756(NRB), 2012 WL 2589080, at *1 (S.D.N.Y. July 3, 2012) (noting that district courts in the Second Circuit have repeatedly held that isolated instances of fondling and groping are not sufficient to sustain an Eighth Amendment claim and finding that plaintiff's claim that the correction officer groped his genitals, buttocks and inner thighs for up to 53 seconds in the course of a frisk did not state an Eighth Amendment

claim). Subsequent to the decision in *Rodriguez,* this District Court reiterated the holding of *Boddie*, that "*severe or repetitive* sexual abuse of an inmate by a prison officer *can be* an 'objectively, sufficiently serious' violation of the Eighth Amendment." *Doe v. Barrett*, No. 3:01cv519, 2006 WL 3741825, at *10 (D. Conn. Dec. 19, 2006) (emphasis added). And, other district courts in this Circuit have found that not all sexual assaults of a prisoner by a guard or corrections officer violate the Eighth Amendment. *See, e.g., Garcia v. Watts*, No. 08Civ. 7778, 2009 WL 2777085, at *7 (S.D.N.Y. Sept. 1, 2009) (holding that two instances of improper sexual contact, several inappropriate comments and an unauthorized cell search did not rise to the level of cruel and unusual punishment to sustain an Eighth Amendment claim); *McEachin v. Bek*, No. 06-cv-6453, 2012 WL 1113584, at *6 (W.D.N.Y. Apr. 2, 2012) (holding that one incident when plaintiff was sexually touched without his consent was not severe enough to state an Eighth Amendment claim). Based upon a review of the case law from this Circuit, the Court adheres to the standard set forth in *Boddie* and declines to follow the holding of *Rodriguez*.

Thus, even assuming that Plaintiff was groped by Defendant Hart exactly as Plaintiff alleges,[1] the Court finds as a matter of law that this single incident of groping during a pat-down was not sufficiently serious to constitute an Eighth Amendment violation. Having determined that the alleged conduct did not satisfy the objective prong of the two-part test for an Eighth

---

[1] At the time of the alleged event, a video camera was monitoring the activities in that vicinity. The videotape was reviewed by Captain Capelton, who described the footage of the event as "inconclusive." At some point thereafter, the videotape was lost, despite Defendants' admission of the importance of maintaining a chain of custody of evidence. Plaintiff maintains that Defendants should not be entitled to rely on the Captain's self-serving characterization of the videotape as "inconclusive." For purposes of this ruling, the Court has construed the facts in favor of Plaintiff and assumes that the videotape would have confirmed Plaintiff's version of the facts.

Amendment violation, the Court need not consider the second subjective prong.  Accordingly, the Court grants Defendants' motion for summary judgment as to Claim I of Plaintiff's complaint.

II.  Plaintiff's First Amendment Retaliation Claim

Plaintiff's second count is for retaliation by Defendants Lieutenant Jeannotte and Captain Capelton after he filed a complaint against Officer Hart.  Plaintiff states that, after he reported the incident, Lieutenant Jeannotte told him that he would not be given a disciplinary report for taking bread from the mess hall if he did not pursue a complaint against Officer Hart.  (Pl.'s Sworn Witness Statement).  Captain Capelton also advised him not to pursue the complaint.  *Id.*  When Plaintiff responded that he intended to pursue the matter, Lieutenant Jeannotte informed him that he would see to it that Plaintiff was given a disciplinary report.  Plaintiff was then given a "Class B" contraband disciplinary report and was placed in the Restrictive Housing Unit.  (Defs.' Ex. H).  Twenty-one days after his placement in the Restrictive Housing Unit, Plaintiff was transferred to another correctional institution, as he had requested. (Defs.' L. Rule 52(a)(1) St. of Undisputed Facts ¶ 32, Admitted by Pl.).  The maximum sanction authorized for a Class B offense is ten days in punitive segregation.  *See* Code of Penal Discipline at 4 (1/1/2008).

Defendants maintain that Plaintiff was placed in restrictive housing [Administrative Detention] on January 23, 2008, for his own safety, pending the investigation of his complaint against Officer Hart.  (Defs.'s Ex. K, DOC Restrictive Housing Unit Status Order).  This fact is confirmed by Plaintiff's own written statement to the State Police:

> Captain Capleton told me not to pursue a complaint because he was going to transfer me to segregation pending an investigation which would be an inconvenience for me.  I told Captain Capleton that I wanted to be transferred out

>of Osborn.  I went down to Captain Capleton's office to make a complaint, after which I was transferred to segregation which the Captain said was for my own safety.  Around 7:00 p.m., I received a "class B" ticket for contraband as a result of me taking two slices of bread out of the cafeteria.  I was in segregation for 21 days before I was finally transferred to Radgowski Correctional Center in Montville. (Uncasville).

(Pl.'s Sworn Witness Statement dtd. 2/26/2008).

The Second Circuit has cautioned that "courts musts approach prisoner claims of retaliation with skepticism and particular care."  *Dawes v. Walker*, 239 F.3d 489, 491 (2d Cir. 2001), *overruled on other grounds by Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002).  Claims of retaliation also pose a threat of unwarranted judicial intrusion into matters of general prison administration because "virtually any adverse action taken against a prisoner by a prison official - even those otherwise not rising to the level of a constitutional violation - can be characterized as a constitutionally proscribed retaliatory act."  *Id.*  To state a claim for retaliation, Plaintiff must show (1) that his actions were protected by the Constitution or federal law; and (2) that his protected conduct was a "substantial or motivating factor" in the alleged retaliatory conduct.  *Friedl v. City of New York*, 210 F.3d 79, 85 (2d Cir. 2000); *Graham v. Henderson*, 89 F.3d 75, 79 (2d Cir. 1996).  To support a claim of retaliation, the allegedly retaliatory conduct must deter a similarly situated inmate of ordinary resolve from exercising his constitutional rights.  It is not necessary that the plaintiff himself be deterred.  *See Gill v. Pidlypchak*, 389 F.3d 379, 381 (2d Cir. 2004).

Here, Plaintiff meets the first prong because his conduct, filing a complaint against a corrections officer, is constitutionally protected activity.  *Graham,* 89 F.3d at 80.  As for the second prong, Plaintiff has failed to establish a genuine issue of material fact that this protected

activity was a substantial or motivating factor in the prison officials' decision to place him in restrictive housing or to keep him there for twenty-one days. To the contrary, Plaintiff admits that he was told by Captain Capelton that he was going to be placed in restrictive housing for his own safety pending an investigation. (Defs.' Ex. K & Pl.'s Sworn Witness Statement dtd. 2/26/2008). This is also the reason stated on the Restrictive Housing Unit Status Order (Defs.' Ex. K). The record further establishes that an investigation was in fact performed, resulting in a determination that Officer Hart had not violated any criminal laws or other DOC policies. (Defs.' Ex. K). The record also provides undisputed evidence that Plaintiff remained in restrictive housing until he was transferred to another correctional facility, as he requested. *Id.*

While Plaintiff is correct that the maximum punishment for a Class B offense is a maximum of ten days in punitive segregation[2] (Code of Penal Discipline ¶ 10 B. 4.), Plaintiff has failed to provide any evidence to support his claim that his protected conduct was a substantial or motivating factor in Captain Capelton's placing him in restrictive housing or in keeping him there for twenty-one days. *See Dorsey v. Fisher*, 468 Fed. App'x 25, 27 (2d Cir. 2012). To the contrary, the only evidence in the record indicates that Plaintiff was placed in restrictive housing as a protection. While the temporal proximity of allegedly retaliatory discipline to an inmate's grievance can be circumstantial evidence of retaliation, *see Gayle v. Gonyea*, 313 F.3d 677, 683 (2d Cir. 2002), a retaliation claim will not survive summary judgment if proximity is the "sum total of [plaintiff's] proof." *Ziemba v. Thomas*, 390 F. Supp. 2d 136, 154 (D. Conn. 2005) (quoting *Colon v. Coughlin*, 58 F.3d 865, 872-73 (2d Cir. 1995)). Here, Plaintiff's conclusory

---

[2] Punitive segregation is a restrictive status imposed as punishment for violating the Code of Penal Discipline. *Alston v. Cahill*, No. 3:07-CV-473, 2012 WL 3288923, at *1 (D. Conn. Aug. 10, 2012).

and speculative allegations that retaliation was a substantial or motivating factor in Defendants' decision to keep him in restrictive housing is not enough to create a genuine issue of material fact.  *See Cole v. Fischer*, 416 Fed. App'x 111, 113 (2d Cir. 2011) (affirming the grant of summary judgment where the inmate did not present evidence that his constitutionally protected conduct in filing a grievance was a substantial or motivating factor for the prison official's adverse action); *Ziemba*, 390 F. Supp. 2d at 155 (finding that the plaintiff had not met his burden of demonstrating the existence of a genuine issue of material fact regarding the corrections officer's retaliatory motive in transferring plaintiff).   Accordingly, the Court finds that Defendants are entitled to summary judgment on Plaintiff's second claim of retaliation.

Having found in favor of Defendants as to both of Plaintiff's claims, the Court need not address Defendants' affirmative defense of qualified immunity.

<u>Conclusion</u>

For the reasons set forth above, the Court grants Defendants' Motion for Summary Judgment [Doc. # 51] as to both counts of Plaintiff's complaint.  The bench trial scheduled for October 16th to 18th, 2012, is cancelled.  The Clerk is directed to enter judgment in favor of the Defendants and to close this case.

SO ORDERED, this   4th   day of October, 2012, at Bridgeport, Connecticut.

                                    /s/ *William I. Garfinkel*
                                    WILLIAM I. GARFINKEL
                                    United States Magistrate Judge